For argument today, we have case 23-1823, Lesko v. United States. Counsel, how do I pronounce your name? Demetrius Corvillis. Mr. Corvillis, please proceed. Chief Justice Moore, and may it please the Court, my name is Demetrius Corvillis and I represent the appellant in this case, Jillian Lesko, who is here in person with us today recognizing the importance of what this case is about. It should not be the law of this country that federal workers who are required to and do perform work are not paid for it. And indeed, it is not the law, because Section 5542A mandates that overtime pay shall be given to workers who perform their work when it is officially ordered or approved. Under the government's interpretation of officially ordered and approved, however, even if your boss expressly orders you to work overtime, tells you you will be fired if you don't, tells you you'll get paid, don't worry about it, and you do perform the work, you actually will not get paid unless the order is reduced to writing. Well, counsel, forget about whether it's reduced to writing. Not every supervisor within the rubric of the government or any particular agency is imbued with the official authority to approve overtime. Is that correct? That is correct, Your Honor. So it may be the case that your boss, even if they did it in writing, wouldn't actually be able to bind the government to overtime. Yes. Okay. Beyond whatever questions the Court might have about the contents of the party's briefing, there's four main considerations I'd like to emphasize today. One is the great injustice done to federal workers by the current state of the law on Section 1542A. Secondly, our appreciation for the fact that the relief we're seeking in this case, for this Court to recognize that some of its precedents on this topic are in conflict and in need of resolution, and perhaps one of them should be set aside, is an extraordinary remedy. But there are reasons in this case to employ that remedy. Third, an update, really, for the Court about the current state of the law concerning how the lower courts have been applying local rights since the Supreme Court issued it over a year ago. And fourth, the potential scope of the order that the Court might issue in this case. First, the great injustice done to federal workers. Your Honors, the Court of Federal Claims in this case Well, we're not a policy body dealing with the injustice. We're dealing with the statute and the regulation, right? That's correct, Your Honor. But nonetheless, in both the cases that address this topic, in the order in this case, the Court lamented the result. And in Doe, at the end of that decision, the Court acknowledged that there was a real concern about the government evading the requirements of FIPA and, in effect, coercing uncompensated overtime. So it's partially a policy argument, yes, but it's also an issue about the government circumventing legal requirements. Okay, but the real issue is whether this regulation, which requires that the order or approval be in writing, is valid or invalid. And we've asked you to focus on Loper-Bright and what the consequences of Loper-Bright might be for the validity of the regulation. Loper-Bright is a case that dealt with the regulation of the private sector. Every case cited in Loper-Bright dealt with federal regulation of the private sector. In a way, this area seems somewhat different. It's not a regulatory situation. It's a situation where there's a regulation governing the relationship between employer and employee and the federal government. And under those circumstances, OPM was created to govern that relationship. Why is it that OPM lacks the regulatory authority to define what kind of approvals are required? Certainly, you must agree that OPM can define who has authority to approve authorized overtime, right? Yes, I think the answer to your question is you have to look at the statute. You have to look at the statute and at the statute mandates and what the best interpretation of the statute is. So some regulations under the statute dealing with overtime are permissible, including defining who has the authority, right? Yes, Your Honor. So if OPM can issue regulations under the statute, why is it if it can define who has the authority, why can't it define how that authority is to be exercised? That is, in writing. Because there's a difference between interpreting statutory language, which is the job of the courts, and providing details about, for example, examples of what might fall within that statutory language. I don't think you're answering my question. My question is if the regulations can define who has the authority to issue overtime, why is it that the regulations can't also define how that authority is to be exercised? Well, again, I think the answer, I think, does turn on you have to look at the statute. The Supreme Court last term decided the seven county cases... Does the statute tell you how overtime has to be approved? No. Well, yes. Yes, it does. It says it has to be officially. I mean, it doesn't say the mechanics, no. Yeah, it doesn't tell you the mechanics of it. That's true. And so OPM can promulgate regulations on the mechanics of how it's approved, right? To the extent that it does not contradict a judicial interpretation of the statute. But the problem here is it does contradict a judicial interpretation of the statute. That's the problem. What judicial interpretation does it contradict? It contradicts the judicial interpretation since Anderson that officially ordered... You're sitting on bonk. We can throw out every single one of those judicial interpretations and look at the statutory language ourself. Yes, you could. And where in the statutory language, I think you just said, it doesn't say how to officially order and approve. It just says it has to be officially ordered and approved. You already agreed that OPM can define who is the authority. If the statute doesn't say how, and Congress could have put in how to do it, then why doesn't OPM have the authority? Again, I think the answer to that is, and the Supreme Court most recently spoke about this in the Southern County cases case, where it talked about, for example, the use of the word in the statute, detailed. And it said the courts define what detailed means. But an agency might give you examples of what details mean. So there's a difference between interpreting the statutory language and then adding up details. Where Congress has spoken, which they have, Congress used language it intended, officially ordered and approved. And yes, this court is empowered to throw out all of these precedents, but should it? The question about the interpretation of officially ordered and approved interpretation, there's no reason for that to have changed in the last 70 years. Can I just follow up on a premise that I think you have agreed with, which is that OPM can define who has the authority to order or approve overtime. Is that from 5542, 5548, or some other statute? Why is it not the case that whatever authority an agency has, agency head has, to direct employees to work overtime and then to sub-delegate that comes from somewhere other than 5542? I'm trying to understand whether 5542 presumes that somewhere there is a proper delegation of authority through supervisors, or whether that comes from 5542 and then OPM gets to specify it in 5548, or what? I think the answer to that is, Loeb or Bright tells us step one is what is the best reading of the statute. My arguments here do presuppose we are retaining the interpretation from Anderson that Mercier also said remained good law. If that's not the case, if the court's inclined to not retain that. At least for my purposes, and I suspect some others, just assume that we're looking at this fresh, okay? Well, if we're looking at this fresh, then I would argue we should adopt the interpretation that was previously adopted for the reasons of dictionary definitions, for the reason that the statute encompasses, the plain language is broad enough to encompass both oral and written orders. And once you have that judicial interpretation, the agencies can regulate where they need to pursuant to the delegation of necessity to administer. They can regulate, they can fill in the details, yes. But once those details cross the line into encroaching upon the judicial interpretation, there's a problem. But the statute doesn't tell you whether the order or approval has to be in writing or not, right? It's silent about it. Counsel, are you aware of, I'm sorry, to answer his question. I'm sorry, I jumped ahead. In Doe, the court acknowledged that the plain language of the statute was broad enough to encompass both written and oral. Does it explicitly say that? No. But the best reading of... So it's silent, no? Congress spoke to the issue and it said officially ordered and approved. And if the courts are looking anew at what... It didn't spoke to the issue of whether it had to be in writing? Not explicitly, no. But if you... By virtue of what the words mean, officially, ordered, approved, Anderson and the cases that followed it looked at what that means and they adopted a judicial interpretation that includes inducement. So inducement's a good example of where... Counsel, can I ask you a question? I want to ask you, are you familiar with 5542G4B? And the reason why I ask is because that's a statute, that's a subsection within the same statute that we're looking at here. And Congress said that there, overtime, it wasn't overtime, I think it was compensatory time, must be approved in writing, must be approved in writing. So how does that cut with regards to your argument here that ordered or approved might not require writing? Well, it shows you that when Congress intends to require writing, it knows how to do that and it uses words that say that. And when Congress intends to use words that encompass both oral and written directives, it can do that as well. But if Congress was silent, as I think you've acknowledged on the specific point we care about today, why shouldn't that silence open the door to the agency making the regulation as to how one officially orders and approves? I would reframe that. I don't think that I agree Congress is silent exactly. What I do argue is that Congress uses words, the courts interpret those words, they interpreted that to include inducement. It might be that OPM has the power to give us details on examples of what might constitute inducement, what sort of workplace behaviors do and do not constitute inducement, give employees a guide of some kind. But if they contradict the judicial interpretation, which they do here by completely proscribing inducement theory as a viable theory of recovery, they have gone against language that Congress has used. Not explicitly, but Congress has spoken by using the words officially ordered and approved. And it's the court's job to say what that means, and they have, and they said it includes inducement. Now, if one question, you said, that got into inducement, but you agree that what the statute requires is officially ordered or approved, right? I'm sorry? What the statute requires is officially ordered or approved, right? Yes. And so that's what's required. There is nothing in the statute that says inducement, right? There's nothing in the statute that says the word inducement. That's right. So there'd have to be a showing under the facts that something was officially ordered or approved, whether it's oral or in writing, right? Yes, and you know, earlier the comment about, oh, well, we're not policymakers. You know, if we win today, if we were to win this appeal, it doesn't mean we win this case. It means that theory is a viable legal theory of recovery. Whether it succeeds in any particular case, we'll turn on the facts of that case. We'll turn on whether there was, in fact, inducement. What does that mean? The problem with your argument is inducement is too broad of a category. You already agree that officially has to be somebody with authority, but inducement could include a basic supervisor that tells you if you don't come in today, you're going to get fired. That's inducement. But that can't be grounds for overtime pay, right? That's not officially if that person has no authority to approve it. So why is OPM allowed to interpret, not even interpret, establish procedures for who is the person entitled to make the official determination but not make the procedures for what's ordered and approved? I don't understand the logic in your argument. Either it implies to all of officially ordered and approved, and the courts get to decide what's officially ordered and approved, not OPM, or it implies to none of it. Well, I don't agree that the statement in your premise that a lower-level supervisor who didn't qualify... Oh, so you're arguing that if a low-level supervisor who has no authority under the agency rules and regulations still orders somebody to come in, that that person's entitled to overtime. I'm sorry, could you repeat that? Okay, let me be clear. You have a low-level supervisor. This person under the agency rules and regulations has no authority whatsoever to approve or order overtime. That supervisor, nonetheless, tells his rehearsed subordinate, if you don't come in, I'm going to fire you. If you don't come in and do overtime, I'm going to fire you. Is that person entitled to overtime compensation? The statutory requirement is officially ordered. As to who is official enough to qualify for that, Congress didn't speak to that. So you think the courts should get to decide who's a sufficient official. And in that scenario, you would argue because this is this person's supervisor, they may have performance evaluation control over them, disciplinary control over them, but not overtime control over them. That's inducement, and that's sufficient. I think that the court's role is to interpret the language and create a... Can you answer the hypothetical? In that hypothetical, would you argue that person's entitled to overtime or not? I don't... I don't know. I don't think that hypothetical is sufficiently fleshed out to allow me to answer that. It sounds like it would be an invalid kind of approval or order. Like if, you know, if Ms. Lesko's co-worker ordered her or approved her for overtime, that would clearly be an invalid approval or order. Right. The court's role is to... So what about... I mean, I'm trying to understand the work that the word officially does. Given that the statute says officially ordered or approved, doesn't that suggest there are unofficial forms of order and approval? Yes. So, therefore, why doesn't officially have the meaning of something formal? In some formal sense, the order of approval must be done. It can't be an informal approval or order. It does have that meaning. And the point I'm trying to make in answering the several series of questions here is that... But the point I'm trying to make is, okay, so we agree that there has to be an order of approval in some formal sense by someone with authority. But what if the statutory interpretation just doesn't go any further? That's about as good as we can get out of that. And now we look over at 5548, and we see this general rulemaking authority to install all kinds of procedural rules, administrative rules to conduct the operations of this compensation scheme. And requiring things to be done in writing is a classic form of that kind of administrative rule. I'm not sure I understand the question beyond to say... I guess the question is you want to do this statutory interpretation exercise of officially ordered and approved. I'm just raising the question of what if the interpretation really doesn't get down to the nitty gritty of the specific mechanics of writing or oral or something else, but it does have to be something formal. It has to be formalized because it has to be and has to be done by someone with authority. And if we start walking down that road, it starts to look less and less like something unofficially ordered is something that fits within the statute. Maybe even something like strong-arming an employee. As wrong as that sounds, maybe that doesn't fit within the statute. Well, I think it's where the statute, the judicial interpretation of the statute set forth a standard and whether in a particular instance a regulation is in compliance and consistent with that standard or not is a question in every case. What do you think would be an unofficial form of approval or order? I think you gave an example just now of a co-worker or a relatively lower-level supervisor. I think from one agency to the next, they may have different structures regarding who has authority. OPM may have the ability to say who constitutes an official and who doesn't. That does not go against the judicial interpretation of inducement. When you earlier conceded that OPM has authority to make rules about who can officially approve,  Yes. I'm trying to understand. Is that an unbounded concession? Does that mean OPM, in your view, can define anyone as being able to officially approve or is it theoretically possible they could come up with a rule that contradicted the statute in defining who can officially approve? General rulemaking authority that's delegated by statute isn't unbounded. There are bounds on it. Bounds of reasonableness, bounds of capriciousness, and so forth. If they were to define who can do that, define who's an official in a manner that is not sensical, in a manner that eliminates people's even high-level supervisors or eliminates manual directives that are not written directives for particular work hours, but they are policy directives like in this case with respect to medical care and so forth where people have to comply with standards and those things are set forth in official documents that are approved by higher-ups, I think that's a different situation. Counsel, what do you think officially approving means? I would define it, and we put this in the briefs, that you need to have somebody with authority and who has the authority is not a question that's answered by the statute, but somebody with authority who gives you a directive such that the work is non-voluntary, required, and or expected to be performed or thereafter approved. Counselor, you argue that we should not follow our precedent in Doe because that case was based on Chevron. In view of Loper, what's a precise impact of Loper on this case? Why should we not stick to our precedent? Well, this is the second main point that I was going to raise with respect to, you know, it's a big ask to deviate from a precedent, to toss out a precedent. And in Loper, the court said that mere reliance on Chevron is not sufficient reason to overturn a case. But it didn't expand upon, well, what might be. Well, why is it this one of those cases? Well, here we have a combination of factors. Not only do we have intervening Supreme Court authorities from Loper, but previously, you know, before Loper came out, we argued in our briefs that Anderson, Doe, and Mercier were not in accord and required reconciliation. It's not typical. This is an atypical case to have multiple precedents on a statutory and regulatory conflict that reach different results for different reasons and leave the state of the law somewhat murky. So on top of that... So if we find in your favor, what do we have to do? Do we have to expressly overrule our precedents? Chevron answered a different question than what was being... Oh, sorry. Excuse me. Doe answered a different question than what we're asked here. It asked whether the regulation was in contravention to the direct... the express words of the statute. But here the question under Loper is, what is the best reading of the statute? And is the regulation contrary to that? So, I mean, yes, in a sense... Yes. Overrule, distinguish, clarify. I would leave the semantics of it to the court, but there's a new framework in town. And the Loper framework says you have to look at the statute and what it says. And we have cases already that do that and provide for inducement theory. The government has not made any real arguments as to why we should not rely on those cases other than to say those words are broad enough to encompass both oral and written, but it doesn't explain why it should exclude oral orders. But we have this combination of... Oh, and on top of that, we have the Mercier opinion, which in addition to... Well, it undercut Doe's rationale in a lot of ways. So we have this precedent, yes, but we have another case that's also precedent, that says Doe was wrong when it said Anderson was overruled. That said Doe was wrong when it said Hanson and Richmond had anything to do with the issues in this case. So, you know, this is not just a simple scenario where there was a prior precedent that directly addressed the issue and we're being asked to overturn it. No. There were multiple precedents at play, and some of the reasoning in one of them was directly contradicted by one of the other ones. And we have now Loper right telling us we've got to look at what is the best meaning of the statute, whereas in Doe they didn't really answer that question, which Mercier made clear. Doe did not turn on the best reading of the statute. They didn't have occasion to even answer that question. They just said because the statute was ambiguous, they would defer to the regulation under Chevron. But we can no longer skip that initial question of what is the best reading of the statute. Counsel, do you want to save some time for rebuttal? I thought that this started at... 30. Okay. Yes, I will save some time for rebuttal. Thank you. Mr. Carhart? May it please the Court. 21 years ago, in Doe, this Court upheld the OPM regulation at issue in this appeal. The en banc Court should reaffirm the regulation's validity for three reasons. First, the regulation falls within the boundaries of authority delegated by Congress. This delegation is most clearly expressed in Section 5548, which allows OPM to enact rules necessary for the administration of the premium pay statute. Is that the source of law that gives OPM not just the ability to regulate, perhaps, writing and requirement, but also to designate who constitutes an official under the statute who's authorized? I'm wondering where the source of authority is for OPM to regulate. It seems that appellant has admitted that OPM has the ability, for example, to regulate who is official enough to approve over time. Is 5548 the source of power for OPM? That is the most obvious source of power, yes. Because 5548 allows OPM to make rules necessary for the administration of the premium pay statutes. And one of those administrative questions, just like the writing element, is who is an official? So, yes, that is the source of authority. Related question. Under what statute do agency heads have authority to order employees to perform overtime work? There's also 5 U.S.C. 301, which hasn't come up in the briefing, I don't think, but it does give agency heads general authority to manage the conduct of employment. So that's a separate source of authority for agency heads. But what we're relying on here is 5548 and the question before this Court about how do we operate. This is, I guess, a version of the question I asked your counterpart. Suppose the head of agency has authority to direct employees to perform overtime work under 301. And then the head of agency also has authority to sub-delegate that authority. At that point, we're not in 5548 land at all. And one way to read 5542 is that it looks elsewhere, outside the whole 5542 and related regime for the head of agency to sub-delegate authority with respect to overtime. And if that's true, where does OPM's authority come from to tell the agency head what conditions there are on that delegation? So 5548 would be the answer. So at the same time, Congress enacted 55, what's now 5542, I'll just use that as a shorthand. It enacted 5548. So it gave OPM this authority to make administrative rules, essentially rules necessary for the administration of the premium pay statute. So the best reading of the statutory scheme as a whole is to read 5542 and 5548 together and to see the officially ordered or approved language in 5542 to be connected to the 5548 language in the sense that Congress is not saying what the prescribed process is in 5542. It's not saying how overtime is officially ordered or approved. But it's recognizing that there are administrative questions to be resolved about how this is going to play out. One related question and then I'll let you get back. So in the initial regulation on July 4th, 1945, there was a sentence before the operative in writing that said heads of departments or independent establishments or agencies may delegate to any officer or employee authority to order or approve overtime in excess of the administrative work week. Do you know what became of that sentence? It doesn't seem to be, at some point it disappeared, maybe in 1966. What happened to that sentence? I'm sorry, I don't know the answer. Counsel, so I just want to follow up on that question from Judge Taranto because the current version of the regulation that is issued here simply says that overtime work in excess may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated. Is that the only language in the regulations that addresses who has the authority? Is that the only language? Off the top of my head, I can't think of other language that would address that. So that's always been what we relied on. Do you view that part of the regulation as interpreting the word officially? I would view both the identity of the approver, the authorized official, and the process by which it is approved as being encompassed by the officially language. In the sense that officially sets forth or presupposes that there's some process, presupposes that there's some mechanism, but doesn't explain what that is. In the regulation itself, in a couple sentences above, says, repeats what the statute says. It says that overtime must be officially ordered or approved. And then in the operative sentence about the writing, it then says overtime is ordered, overtime can be ordered or approved only in writing, suggesting that it is the writing requirement is coming from an interpretation of officially. Do you agree with that? The writing requirement is an outgrowth of the rulemaking authority in 5548. And I agree that the word officially suggests a process that has to be followed, but it doesn't explain what that process is. In that sense, Judge Schill, I think I agree with what you're suggesting. The word officially acknowledges that there's going to be some limitation on orders or approvals. They have to be official. But it doesn't explain how that's satisfied. Do you agree that there's cases and just an understanding that when we're talking about government and workers and talking about official, a lot of times that means somebody who's been authorized, has the authority to do something within the government. It is not just your co-worker, but instead, it's somebody who has the authority to order overtime. I agree that that's part of the concept of officially. The identity of the individual. But I would also say that there are elaborate processes within the government, including, especially within the pay context, about what processes need to be followed. So that word officially can encompass more than just the identity of the approver. But also note, and this didn't come up in the opening argument, but OPM's regulation, originally the Civil Services Regulation, was a contemporaneous construction of the statute. So when we're looking at what these terms might mean, the fact that OPM had this definition dating back to 1945, that's evidence in favor of OPM's behavior. What about Anderson? I mean, you've got Anderson decided in 1956, Enbonc Court, our predecessor, Enbonc, sat there and looked at that language and said, you know, you can't require a writing that an oral order would be sufficient. I mean, why and then Congress did not choose to change the language of the statute, notwithstanding the fact that it later enacted other statutes, within the same statute it had subsections that expressly required a writing. How do you respond to that? A couple points. First, Congress also didn't change the statute after the regulation was enacted, too. So you had a 10, 11 year period where the regulation was in effect. Congress revisited the overtime pay scheme and didn't change the statute then. More broadly on Anderson, so there are a couple angles on that. One is the stare decisis angle. So that comes up in the context of, you know, should this court be following the Doe rule or the Anderson rule? Our submission is the Doe rule is the rule to follow for a few reasons. One is the current reliance interests have been formed by Doe rather than Anderson. Doe's been in law for 20 years. The second is the Doe rule is clear. Do you agree that the plain I think that you can see that the language at issue here is broad enough to cover both oral orders and written orders, right? In some context. It's your view because you haven't made that argument. Instead you're making a delegation argument, right? In some context, it can encompass both. There is a limitation in the sense that the phrase presupposes formalities were followed. So that's the bottom line interpretation. Formalities have to be followed whether it's verbal or written is going to depend upon the content of those formalities, but the statute doesn't say what those formalities are. And it doesn't say in writing. The statute does not say in writing, but it presupposes that there are going to be some formal processes and then it gives OPM the administrative power which would reasonably extend to creating those sort of administrative rules. Do you know of any other case post-Loper that have facts like this where there's a general delegation of authority to administer and then there's say 15 statutes, many of which have kind of variable words of the type that you're talking about. How do we know that in that circumstance we are supposed to defer to the agency's interpretation?  there are cases post-Loper that have considered delegations. I agree with that. I've looked at many of them. They look to me to be more specific and clear delegations than in this case. But I'm wondering do you know of any that have a more general delegation as is the case here? So for example, Zimmer Radio v. FCC was an 8th Circuit case from last month. So that's to act in the public interest. So that's a pretty general delegation. United States v. Coquinda is a 4th Circuit case about issuing guidelines and regulations interpreting SORNA. So there are cases that have considered broad language. Can I be a little more specific? Do you know of any cases where there's a delegation to an agency to interpret something or I guess here it's not really interpret but to provide rulemaking but it's not clear say that rulemaking isn't tied to specific statute or specific language within a statute. So I just want to quickly, so this 5548 delegation was tied to, originally was tied to FIPA. So at the same time as 5542 is enacted, 5548 is enacted. So this is not like those cases where sometimes there are general delegations that just let agencies do make rules generally. This is not that generic. Are you telling me that 5542 and 5548 were enacted at the same time and nothing else was enacted at that time? No. But they were enacted at the same time in the sense that at the same time as Congress is enacting this officially ordered or approved language it's also enacting it's also recognizing that there are gaps and administrative issues that OPM is going to have to flesh out. So that's the first point. So in that sense and just quickly one of the examples cited in Loper is Wayman, which is an 1825 case. In that case too had a pretty, one of the delegations it considered was section 17 the Judiciary Act, which had this sort of broad language about using the word necessary. So it's not uncommon to have delegations using language like this. And Loper was clear that delegations generally have to be respected. Wasn't Wayman more specific? It said that for executions and other processes it was tying that broad language you referred to to specific things. Well that wasn't the only language though. There also was more general language. So there's nothing foreclosing delegations being applied in this circumstance especially when this all arose out of the same statute and the context here another point that's I think important that hasn't come up yet 5548 also says these rules have to be issued with the approval of the that is unusual language and it's best understood as reflecting a view that this is a matter for the executive branch and it's important enough that Congress wants the President personally Harry Truman, which he did to look at these regulations and sign off on them. So that's a significant feature of this regulation that suggests this is not just some ordinary delegation. One way I think perhaps the other side is looking at this might be described as follows. The question of the meaning of 5542 under Wilbur Bright is what is the best reading of that? Now that best reading might be that certain kinds of filling up the details are left to an agency. Why isn't the best reading that with the term officially and the basic common sense of the person doing the ordering or the approving actually has to have authority to do it. That's certainly a requirement under the best reading. But why is the best reading not at that point that that same conclusion does not follow for a writing requirement because after all the effect here is that an employee has done work for which he's otherwise not going to get paid but by assumption here orally is directed to do it. Why is that not the best reading and therefore as to that there's no delegated authority to fill up a detail. So presupposing that the court's looking at the best reading of 5542 and that's the question that you're asking about Judge Toronto. So first our first point is looking at the language. There's an element of formality embedded in this language that encompasses not just the identity of the approver but also the process by which it's approved. Second, it's a contemporaneous construction. So OPM, again that's evidence to the extent that there's some doubt that's evidence in favor of OPM's reading. In the policy suggestion that your policy issue that you're alluding to. Don't diminish it by calling it policy. That's the obvious point of saying individuals who work overtime should get paid. But from a policy perspective there is a strong argument for clear rules as well. So there are countervailing concerns or countervailing policy issues that would support OPM's reading which the Supreme Court recognized in seven county infrastructure. When it's a question about the American economy predictable rules are generally beneficial. Here when an employee knows in advance that they have to get a writing requirement or they have to get overtime ordered or approved in writing. A, if they have it, they're protected. They're able to point to something that says this was approved and use that as ability to get paid. Two, if they don't have it then they know that under the regulation that there is not yet an official order of approval. So in that sense that's why I want to push back on that because the assumption that this is necessarily worse for employees we don't agree with that. That would not be my assumption. I would spot you as they say these days, the proposition that there's a perfectly reasonable case for a writing requirement. The question is in the absence of putting aside a regulatory authority and you're just trying to figure out what the best reading of the statute is. Why wouldn't that be that the who is definitely required but a how that deprives an individual who has actually been ordered but orally to work and work doesn't get paid for that work. So first the best reading of the statutory scheme as a whole is that Congress created this phrase in 5542 that presupposes a process is filed without defining what that process is and then gives OPM the authority to make rules about what the process is. So that's the bottom line response to your Honor's question. Counselor, isn't it possible that there could be a lot of different regulations the likes of which we're not discussing now that might cut back on potentially otherwise legitimate claims for entitled overtime. For example, a timing requirement. Nothing in any of the statutes talks about when an approval or how close in proximity to hours work an approval must come. So suppose that there was a regulation that OPM adopted that said if you want to get paid for overtime you must submit your request or your extra hours worked within seven days. And if you don't do it within seven days within a certain time period, then you can't claim it. Wouldn't that be permissible under your view? An employee could try to challenge that. I think what they would have to show is that it falls outside of the scope of the delegated authority that the timing requirement like that effectively isn't an administrative requirement that's consistent with the scope of the statute. So in principle could you have a regulation like that? Yes. But an employee could challenge it. I'm not asking you what could happen. Would that be a valid regulation? Would that be necessary for administration? I could I mean I would have to think. That's a question for OPM really. But would it be defensible to say? What kind of regulations can OPM adopt? Give me some examples of what would be necessary for administration and not conflict with statutory language. Well this one, the writing requirement. The identity of the approver is also in the regulation. Certainly doesn't contradict any requirements. So those would be the two sort of prototypical examples. Other than that there's a lot of details that are filled in by agency policy. Well they could require documentation that the person actually worked those out. I'm sorry. They could require documentation that the person actually worked those hours. They could require documentation, yes. It's all part of the process of how the overtime gets approved. That's right. And there are other contexts in which that sort of documentation is required. And unless the statute forecloses that, we fall within the administrative rules that can be created by OPM to carry out the statute. Now we talk a little bit about I know there's a lot in the regulation also about how to calculate the overtime. There are detailed rules about that. That's true. And certainly Congress contemplated that those kind of determinations would be delegated to OPM, right? Absolutely, yes. Yes. And part of Congress' concern, as evident in the legislative history, is deficiency appropriations there's a multifaceted approach that Congress is taking this issue in the sense that they have to think about a lot of different things, not just... So is it your argument that an agency can adopt a regulation that limits a substantive statutory right?  first, that is essentially what Mercier said. So that's Mercier's view. I don't think that in this context... And that's what Doe said too, right? Yes. Doe is agreeing with... Yes. Mercier is agreeing with Doe in that sense. But the critical point from our perspective... Would you agree that those portions of those opinions based the analysis on Chevron deference standard? I actually think there are earlier cases that we cite in our brief that apply this principle in other contexts. But the most important point from our perspective is that that statutory right presupposed that the appropriate formalities be followed. So the regulation doesn't limit the statutory right. It just explains the process that must be followed. How can you read something presupposed as something else? I mean, we have a statute. The statute says X. And now we have a regulation that says X minus. So I would disagree that it's X minus in the sense that the phrase officially ordered or approved combined with the delegation of 5548 doesn't answer the question of how the official order of approval must happen and gives it to OPM to make rules. But to be clear, that's your assumption. That's not what the statute says. That's what we're saying. The best reading of the statute is in that if you look at the words officially ordered and approved, they all have this element of formality embedded within that. Is the writing requirement a restriction on the statute? It's an explanation of how the official order of approval would happen. It's filling in the details that aren't filled in by the statute. So we should not look at it as a formal restriction, but just as a logical expression? You should look at it as there's a power to make rules about administration given to OPM. And there's a statute that says officially ordered or approved without explaining what an official order of approval is. And the administrative power extends to making those administrative rules that are necessary to explain an issue that's not addressed in the statute. Would your answer be any different to this case if the word officially were not in the statute? We would be making the same argument because the words ordered and approved have the same sort of formal element within them. But officially really reinforces Why do you need the formal element? I don't even understand. I don't understand why you've limited yourself so much. 5548 gives OPM the authority to adopt regulations for administration. The form that an order must take is procedural in nature. Why do you need anything that imbues formality? Why isn't 5548 sufficient on its face to give OPM authority to determine the format? It does. It absolutely does. The point I'm emphasizing You're saying officially helps me, but I don't need it. Yes, absolutely. And I'm saying 5542 if, you know, OPM can't contradict the statute. But the point we're making is OPM hasn't contradicted the statute. I'm trying to respond to questions about 5542, but absolutely, I agree with you. Why hasn't it contradicted the statute? Help me on that. I thought you conceded that officially ordered or approved includes, on its face, best reading, written, as well as oral orders or approval. And yet, when OPM gets around to making its rule, it says no, no, no, we're going to cut out the oral and limit it to writing. Why isn't in a best interpretation world why is that not a contradiction? To be clear, I have not conceded that's the best reading of the statute. Well, I think you did concede that on its face, I thought, officially ordered or approved includes oral as well as written. Not necessarily. What I've said is first, there are meanings of order that actually do explicitly require writing, like a change order. But are there some that don't require writing? Yes, of course. That's definitely true. There are different senses of these words, but ultimately, at bottom, they don't answer the question of the procedure that must be followed. So an invalid order is not really an order. Could you identify what forms or what context of the usage of order does include oral orders? You just said in some context it does. What would those kinds of contexts be, and why are those contexts different from this one? I was thinking of the analysis in Doe where it goes through different dictionary definitions, and we quote some of those as well, that there are some definitions that allow for oral approvals. The reason this context here is important is because you're talking about money being taken from the treasury, and the closest analogies are something like a change order. Counsel, what do you contend officially order or approval means here in the statutes? What do you contend that means? We contend that it means that there has to be an order or approval with the appropriate formalities, and those appropriate formalities are not defined in the statute. So it leaves open the question of what the appropriate formalities are, and 5548 lets OPM, as Chief Judge Moore suggested, make administrative rules. And you're applying the word officially for formalities? Where are you getting the formalities from? Is that from the statute? Both from the word officially, but also from the word order too, because as I was just saying, sometimes orders do require, sometimes orders must be in writing. It's ordered or approved. That's right. Does approval always have to be in writing? Does it always have to be in writing? No. Is there anything in your dictionary's definitions to suggest approval is in writing? The definitions we quote talk about authoritativeness, so they're talking about the same concept of formality. We do cite the policies on leave, and sometimes we do, for federal employees, sometimes you do need to get approval in writing for certain things. Approval on its face doesn't require writing. Approval requires the requisite formalities being followed, and it may be that those formalities include a writing requirement. It sounds like your argument is that Loper-Bright has no impact on this case. Do I understand you correctly? You do not, Judge Stark. So Loper-Bright sets forth the framework that this court should follow, and that framework is there's a delegation in 5548, and the court should look, using the framework set forth in Loper-Bright. That delegation seems silent on the point that we care about, and you seem to be asking us to interpret silence in a statute on a specific point to mean agency can do anything reasonable. Isn't that your view? Our view is that the writing requirement is encompassed within the necessary for the administration authority. So if OPM is being given discretion to make these sorts of administrative judgments, that they that is their job to make these judgments. They are best positioned to make these judgments. Why isn't that Chevron all over again? Because we're not arguing that just because the statute's ambiguous that therefore there should be a deference to the agency's interpretation. What we're arguing is that this case involves a specific issue addressed in Loper-Bright, which is the delegation question. If OPM's position in this case rested on its view that the regulation said this is the best way to interpret this statutory language, that would be improper under Loper-Bright, right? The agency doesn't get to deference on interpretation of the statutory language. Do you agree with that? After Loper-Bright. Right. Your point is that doesn't answer the question of what 5548 allows the agency in terms of gap filling, which is what is still permitted. If 5548 didn't exist, we'd be in a different world, right? It would be us deciding what officially ordered an approvement and probably applying it under that definition in every specific factual case. Then you would look, are there other delegations besides 5548? The clearest one is 5548. That's what we've relied on. That's why OPM has this broad authority. That's generally the sort of thing that OPM does, right? That is generally the sort of thing that OPM does, is define forms, approvals, how things would be done. It's across the board, right? Absolutely. I see my time's  Yes, absolutely. OPM, the Civil Service Commission was involved in the promulgation of the statute. They testified at the hearing. Going back all the way to World War II and continuing to this day, this has been the subject matter expertise of OPM and the best reading is that's the reason that Congress gave this broad authority to OPM. It does not necessarily want to have to address all these issues. The kind of detailed analysis you need to do to address every single issue related to overtime pay and pay scheme generally, they want to be able to delegate in some instances, and this is a strong example of that. Thank you, counsel. Mr. Corvallis, give him six minutes. I'm balancing out your time because he might have a little bit over. I appreciate that. The answers to most of the questions that I just heard posed by the court turn on the initial questions the court asks us to brief, which is how should the phrase officially, ordered or approved, be interpreted? What is the judicial interpretation? Is it what it's always been from Anderson and through to Mercier? Are we sticking with that or are we not sticking with that? The answer to that is very important because I think we all would agree, the delegation of necessary to the administration does not allow an agency to adopt a regulation that encroaches upon a statutory right. But that means you have to ask yourself, well, what is the statutory right? I'm not sure you're right about that. I'm not sure that you can't encroach on a statutory right. You can't contradict or conflict directly with the statute. The statutory rights are bestowed all the time and then agencies can adopt regulations that effectuate procedures that might, in fact, cut back on those rights. In this case, to the extent that Brice has discussed that issue, it has been in the context of Doe's discussion of Hansen and Schwecker. I'm not interested in that. The statute is just completely silent, as far as I'm concerned, on the writing requirement. Just silent. If the statute's silent, then what it comes down to, to me, is was OPM authorized to institute a writing requirement for 5548? Why do you say no? Well, the cases that have come out since Loper-Brite that address these kinds of issues, both from Supreme Court, the Seven Counties case, and the Las Vegas Sun case from the Ninth Circuit, the institutional shareholders case from the D.C. Circuit, what they talk about is it's the court's job to interpret what statutory language is. I know, but I just told you what I think it is. I think it's silent on this point. I don't think anything in the words, officially ordered or approved, tells me anything at all about whether there should be a writing requirement. So if that's the way I view the term Congress gave, is OPM allowed to introduce a writing requirement as part of the process? I think if the court's judicial interpretation of the statutory language changes, I mean, what I hear you saying is a change from the previous judicial interpretation of what those words mean. We're in bank. I'm telling you what I think the words mean. So I'm asking you what happens. Right, and I'm conceding that if that changes, if the court breaks from that definition, then all this analysis changes because our position is, and the rationale set forth in the case I just mentioned, they talk about it's the court's job to define a category of what define what the statutory language means, and then the agency may regulate in a way that adds details to that, but you can't contradict that. You can't, for example, change the word solicit in the statute, that's from the Ninth Circuit case that I mentioned, to include solicit and advice. Those are two different things. So let's start with the definition of officially ordered or approved. Officially means somebody with authority orders or approves it. Right, so that's our statutory definition. Can OPM say, in order to demonstrate this, you have to give us your time cards to show you've worked these overtime hours. Can they do that? Yes, I think the answer to the question about, there was a few questions about, could they... Can they set the level of who is the person authorized to do it? I think within reason... Why? If your view is it's our job to interpret who officially authorizes and approve, then why isn't it our job to determine what's the appropriate approving official? Well, I'll be honest, I may have answered that question incorrectly. I think that, I'm not aware of any specific statute that says OPM has the authority to... So you think that officially ordered and approved should just be given its plain meanings and then in every single one of these cases it should be up to the judge involved to determine whether that bare minimum statutory standard was met on an actual application? Yes, and I think if the OPM were to endeavor to have a regulation that identified who the officials were that were authorized, I think the court would look at its own thoughts about what are the plain languages of that term. They would consider the regulation. They would ask, is that consistent with their judicial interpretation? If it is, they'll honor that. And if it's not, if they're defining officials with authority in a way that is wacky and doesn't make sense, then I don't think that the court would follow that. But just wrap up what I was saying. If the court is... I concede the analysis does change. If the court's interpretation of the officially ordered and approved changes, then the whole rest of the analysis changes. However, if the court retains the judicial interpretation of officially ordered and approved as being encompassing of inducement theory, then what the agency has the power to do is maybe add things like the timekeeping requirements. Maybe give examples of what inducement may be. Maybe they have the ability to reasonably identify who is an official and who isn't. But what they don't have the power to do is to change the definition that the courts have given to the statutory phrase in a way that eliminates a whole category of orders that by their very nature would never have been produced writing, to use the words of Anderson. In summary, we would ask that the court reverse the lower court's decision because inducement theory should remain a viable legal theory of recovery for overtime under Section 5542. Thank you.